Evan J. Smith (SBN 242352)
Ryan P. Cardona (SBN 302113)
BRODSKY SMITH
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel:   (877) 534-2590
Fax:   (310) 247-0160
Email: esmith@brodskysmith.com
       rcardona@brodskysmith.com

*Attorneys for Plaintiff*

Jason Moberly Caruso
Christopher C. Steckbauer
NEWMEYER DILLION
895 Dove Street, 2nd Floor
Newport Beach, CA 92660
Tel: (949) 271-7388
Email:  jason.caruso@ndlf.com
        christopher.steckbauer@ndlf.com

*Attorneys for Defendant*

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICELA VALDEZ CHISM, <br><br> Plaintiff, <br><br> vs. <br><br> AWARD METALS, INC. a/k/a PACIFIC AWARD METALS, INC., <br><br> Defendant. | Civil Case No.: 2:23-cv-04952-CBM-BFMx <br><br> **CONSENT DECREE** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between Maricela Valdez Chism ("Plaintiff") and Award Metals, Inc. a/k/a Pacific Award Metals, Inc. ("Award Metals" or the "Defendant"). The entities entering into this Consent Decree are each an individual "Settling Party" or "Party" and collectively the "Settling Parties" or "Parties".

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff contends she is concerned with the environmental health of the Walnut Creek, the San Gabriel River and overall San Gabriel River Watershed, of which the Walnut Creek and the San Gabriel River are a part, and uses and enjoys the waters of the Walnut Creek the San Gabriel River, their inflows, outflows and other waters of the San Gabriel River Watershed;

**WHEREAS**, Award Metals is the operator of a facility that is engaged in the production of sheet metal products, and is located at 1450 Virginia Ave., Baldwin Park, CA 91706, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff contends that her use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff contends she acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit" or "Previous Industrial Stormwater Permit"), and as amended by Order No. 2014-0057-DWQ as amended by Order No. 2015-0122-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, the Facility is listed as operating under SIC Code 3444 relating to Sheet Metal Work. Defendant obtained coverage for the Facility in 1993 under the California Industrial General Permit, under the issued WDID No. 9 19I009949. Defendant thereafter renewed the coverage for the Facility in 2015 under the same WDID No. The 2015 "Notice of Intent" for the Facility to comply with

the terms of the Industrial Stormwater Permit lists "Award Metals Inc." as the Operator and Facility names;

**WHEREAS**, on April 19, 2023, Plaintiff sent Award Metals, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board – Los Angeles Region ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the Award Metals Facility[1];

**WHEREAS**, on June 22, 2023, Plaintiff filed a complaint against Award Metals in the United States District Court, Central District of California (Case No. 2:23-cv-04952-CBM-BFM), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and the IGP at the Award Metals Facility ("Complaint");

**WHEREAS**, Plaintiff alleges Award Metals to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the Award Metals Facility;

**WHEREAS**, on or about August 16, 2023, the Parties (including Plaintiff's expert environmental consultant) conducted an inspection of the Facility;

**WHEREAS**, while disputing the validity of the assertions made by Plaintiff, Award Metals has agreed to undertake certain revisions as more fully described below in response to the allegations contained in Plaintiff's Notice Letter and Complaint;

**WHEREAS**, Award Metals continues to deny all allegations in the Notice Letter and Complaint relating to the Award Metals Facility;

**WHEREAS**, Plaintiff and Award Metals have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and Complaint without further proceedings; and

**WHEREAS**, all actions taken by Award Metals pursuant to this Consent Decree shall be made

---

[1] For purposes of this Consent Decree, the Industrial General Permit and any amendments thereto in effect at the time of Award Metals' required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

   **1.**   The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

   **2.**   Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Award Metals Facility is located within this District;

   **3.**   The Complaint alleges claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

   **4.**   Plaintiff has standing to bring this action; and

   **5.**   The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree that is brought during the term of this Consent Decree.

## I.   OBJECTIVES

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in her Notice Letter and Complaint. Specifically, Award Metals agrees to comply with Receiving Water Limitation VI.A. in the IGP which requires that Award Metals "shall ensure that industrial storm water discharges … do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water,"; Effluent Limitation V.A. of the IGP which requires that Award Metals "shall implement BMPs [Best Management Practices] that comply with the BAT/BCT requirements of . . .[the IGP] to reduce or prevent discharges of pollutants in . . . [Award Metals'] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability"; and the Monitoring, Sampling, and Analysis Requirements found in § XI of the IGP. Award Metals shall maintain BMP compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the IGP. Nothing herein shall

be interpreted as an admission by Award Metals that it has previously failed to comply with these or any other requirements of the CWA or the IGP.

## II. AGENCY REVIEW AND TERM OF CONSENT DECREE

**A.     Agency Review and Comment.**  Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Award Metals.  In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**B.     Effective Date.**  The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

**C.     Termination Date.**  This Consent Decree shall terminate three (3) years after the Effective Date ("Termination Date"), or at such time as Award Metals ceases to have stormwater discharges at the Award Metals Facility subject to the IGP and Award Metals:  1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to Plaintiff.  If a motion regarding Award Metals' compliance with this Consent Decree is pending at the time the Consent Decree would otherwise terminate, the Court will retain jurisdiction to consider it.

## III. POLLUTION CONTROL REQUIREMENTS

**A.     BMP Implementation/Revisions.** Award Metals shall cause the following additional BMPs and/or BMP revisions at the Facility to be carried out in the specified location and time frame as follows:

   1.     Award Metals shall perform monthly pressure washing of the two drainage channels at the Facility that flow onto Vineland Avenue to remove dirt and sediment;

   2.     Award Metals shall install filter socks in the drainage channels at the Facility that flow onto Vineland Avenue.  These filter socks shall remain in place during the winter months

(December 1 to February 28), and during periods of known precipitation, if known to Award Metals with sufficient notice and if feasible;

3. In the event that Award Metals renews the lease at the Property past the currently contemplated lease termination date of December 2025, then Award Metals shall, by July 1, 2025, assess the installation of a concrete curb along the fence that is adjacent to the neighboring business, near the loading dock and along the long narrow outdoor driveway/storage area that exits onto Virginia Avenue, provided Award Metals still occupies the Property at that point;

B. **SWPPP Revisions/Amendments:** Award Metals shall carry out the following actions regarding the Facility's requisite Storm Water Pollution Prevention Plan (the "SWPPP") in the manner and time frame specified below as follows:

1. Within forty-five (45) days after the Effective Date revise and amend the effective SWPPP for the Facility, and the Site Map included therein.

2. Cause the Revised SWPPP to include the following:

   a. Update the Pollutant Source Assessment and Potential Pollutant Sources, to identify additional monitoring parameters on a facility-specific basis or based on receiving water TMDLs;

   b. Update the included Monitoring Implementation Plan ("MIP") to add a sampling point where the drainage swale on the driveway in the middle of the property (industrial), flows into the employee parking area (non-industrial) on the north side of the property, as an Alternative Discharge Location for the parking lot discharge point onto Virginia Avenue;

   c. Update the MIP to add a discharge point at the driveway entrance where storm water from the narrow outdoor storage area between the neighboring properties on the north side of the facility discharges onto Virginia Avenue (if warranted based on a reassessment of the flow in this area);

   d. Update housekeeping BMPs to include cleaning the drainage channels to removed accumulated dirt and sediment, and the frequency of cleaning;

      e.    Update housekeeping BMPs to describe where and how often the vacuum sweeper is operated;

      f.    Update housekeeping BMPs to describe where and how often a contracted street sweeper service is performed;

      g.    Update housekeeping BMPs to describe where and how often the magnetic sweeper is used;

      h.    Update the preventive maintenance BMPs to include regular maintenance of the vacuum sweeper, including changing of brushes and disposal of debris;

      i.    Identify all sources of Non-Stormwater Discharges ("NSWDs"), both authorized and unauthorized, and to where they drain and/or discharge from the facility; and

      j.    Clarify that water accumulation in the two loading docks is strictly storm water, and not industrial wastewater; and

      k.    BMPs described above in § III(A).

3.    Cause the Revised Facility Site Map to include the following:

      a.    Show the current Facility boundary;

      b.    Show the locations of all discharge points, including discharges from non-industrial areas;

      c.    Show the drainage areas that flow to each discharge point;

      d.    Show current impervious surfaces, including covered outdoor storage areas and storage racks; and

      e.    Show locations of NSWDs.

4.    During the term of this Consent Decree, Award Metals shall provide Plaintiff pursuant to the notice provision in § VIII(E) with a copy of any revised or updated SWPPP within ten (10) business days after it is submitted through SMARTS.

**C.    Numeric Action Levels ("NALs") and Numeric Effluent Limitations ("NELs") for Discharges from the Award Metals Facility.**

1.    The following Numeric Action Levels ("NALs") in the IGP are applicable to the Facility based on the general parameters required to be sampled pursuant to the IGP, its SIC code(s) and/or

pollutant source assessment: (i) pH; (ii) Oil and Grease; (iii) Total Suspended Solids; (iv) Iron; (v) Aluminum; (vi) Zinc; and (vii) Nitrate + Nitrite Nitrogen (N+N). Award Metals will continue to act in conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time.

2.

3.  **Exceedance Response Actions (ERAs)**

    a.   Award Metals is required to comply with the Exceedance Response Action requirements of the IGP as stated in IGP § XII.

D.  **Sampling and Analysis**

1.  During the term of this Consent Decree, and as set forth in the IGP, Award Metals shall collect samples of Qualifying Storm Events ("QSE"), as defined in the IGP, from at least two QSEs during the first half of the reporting year (July 1 – December 31) and from at least two QSEs during the second half of the reporting year (January 1 – June 30) as set forth by IGP requirements. However, nothing herein shall require Award Metals to conduct sampling when a QSE, as defined by the IGP, does not occur. Furthermore, nothing herein shall require Award Metals to conduct sampling when no discharge resulting from a QSE occurs, for example, due to the implementation of BMPs that prevent storm water discharge.

2.  Award Metals shall comply with the analytical test methods as required by Section XI.B of the IGP as more fully described in the Monitoring Implementation Plan that is included in its SWPPP. All reported analyses required by the Consent Decree shall be reported within thirty days of the laboratory receipt of the sample or as promptly as possible upon receipt if the laboratory takes more than 30 days to report the analyses.

3.  During the term of the Consent Decree, Award Metals will give notice to Plaintiff of the filing of any reports or other documents containing the complete laboratory results of samples collected as required by this Consent Decree within ten (10) business days of certifying in SMARTS.

E.  **Visual Observations**. During the term of this Consent Decree, Award Metals shall conduct and document visual observations pursuant to Section XI.A of the IGP.

F.     **Annual Report.**  Award Metals shall give notice, pursuant to Paragraph VIII(E) hereof, to Plaintiff when Award Metals submits an Annual Report to the State Board no later than July 15 of each year during the term of this Consent Decree.  The Annual Report shall contain all information required by the IGP.

IV.    **MONITORING AND REPORTING**

A.    **Site Inspections.**

   1.    Once during the term of this Consent Decree, Plaintiff may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date.  Up to three (3) of Plaintiff's representatives may attend the site inspection.  The site inspection shall occur Monday through Friday, excluding Federal and religious holidays, between 9:00 a.m. and 4:00 p.m.  Plaintiff and Award Metals shall work in good faith to select a mutually acceptable date for the inspection, which will be scheduled at least ten (10) business days in advance.  Award Metals' personnel, consultants, contractors, or attorneys may accompany Plaintiff's representative(s) throughout the inspection. No photography by Plaintiff's representative(s) will be permitted, absent prior written consent by Award Metals.

   2.    Plaintiff shall provide Award Metals with any comments regarding the Site Inspection within seventy-two (72) hours of the completion thereof.  Award Metals shall respond to Plaintiff's comments within thirty (30) days of the date on which they are received; however, Award Metals is not obligated to respond to any comments regarding the Site Inspection received after seventy-two (72) hours has passed.

B.    **Compliance Monitoring and Oversight**.  Award Metals shall make a one-time payment of Six Thousand Five Hundred Dollars ($6,500.00) to compensate Plaintiff's Counsel for costs and fees to be incurred for monitoring Award Metals' compliance with this Consent Decree.  Payment shall be made payable to "Brodsky & Smith" via U.S. Mail within 10 days of the Effective Date.

C.    **Award Metals Document Provision.**  During the term of this Consent Decree, within ten (10) business days, Award Metals shall give notice to Plaintiff of all documents related to compliance with the IGP and/or this Consent Decree at the Award Metals Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality.  Any correspondence related to Award Metals' compliance with the IGP and/or this Consent Decree received by Award Metals from

any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten (10) business days of receipt by Award Metals. Provided, however, that this Consent Decree shall not require Award Metals to disclose any information or documents subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

V. **ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS**

A. **Environmental Project.** To remediate the alleged environmental harms resulting from alleged non-compliance with the 1997 Storm Water Permit and IGP alleged in the Complaint, Award Metals agrees to make a payment of Three Thousand dollars ($3,000.00) to the "Council for Watershed Health" and mailed to The Council for Watershed Health attention Eileen Alduenda, Executive Director, 177 E. Colorado Blvd., Ste. 200, Pasadena, CA 91105. The payment shall be made within 10 days of the Effective Date.

B. **Reimbursement of Attorneys' Fees and Costs.** Award Metals shall pay a total of Forty Thousand Dollars ($40,000.00) to "Brodsky & Smith" for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made payable to "Brodsky & Smith". The payment shall be made within 10 days of the Effective Date.

VI. **DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**

A. **Continuing Jurisdiction.** This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files a timely motion and is granted an extension of time from the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

B. **Meet and Confer.** A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of fourteen (14) business days from the date of the notice. The Parties

may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.     Dispute Resolution.**  If the Parties cannot resolve a dispute by the end of the meet and confer informal negotiations, then the Parties shall request a settlement meeting before the Magistrate Judge assigned to this action.  In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court.

**D.     Burden of Proof.**  In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

**E.     Enforcement Fees and Costs.**  In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), Federal Rule of Civil Procedure Rule 11, applicable case law interpreting such provisions, and/or as provided by statutory law and/or case law.

**VII.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

**A.     Plaintiff's Public Release of Claims.**  This Consent Decree is a final and binding resolution between Plaintiff, on her own behalf, and on behalf of the public and in the public interest, and Award Metals, and its parents, subsidiaries, affiliated entities under common ownership, directors, managers, members, divisions, affiliates, insurers, landlords, lenders, successors or assigns, officers, agents, employees, attorneys and other representatives, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any alleged violation of the CWA, 1997 Storm Water Permit, and/or IGP that was alleged in the Complaint, Notice Letter, or that could have been brought pursuant to the Notice Letter or Complaint.  Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

**B.     Plaintiff's Release of Additional Claims.**  As to Plaintiff for and in her individual capacity only, this Consent Judgment shall have preclusive effect such that she shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by her against Award Metals or the Releasees based on

the facts alleged in the Complaint and/or the Notice Letter, whether or not based on actions committed by Award Metals.

**C.     Waiver of Rights Under Section 1542 of the California Civil Code**

**1.**     Plaintiff acting in her individual capacity waives all rights to institute any form of legal action, and releases all claims against Award Metals, and the Releasees, (referred to collectively in this Section as the "Claims"). In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which she now has, or in the future may have, conferred upon her with respect to the Claims by virtue of the provisions of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**2.**     Plaintiff understands and acknowledges that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint or Notice Letter, Plaintiff will not be able to make any claim for those damages against Award Metals and the Releasees.

**D.     Award Metals' Release of Plaintiff.**  Award Metals, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, her attorneys, and other representatives for any and all actions taken or statements made by Plaintiff and her attorney and other representatives, whether in the course of investigating the Claims or otherwise.

**E.     Parties' Release.**  Unless specifically provided for in this Consent Decree, the Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates and divisions, and their respective current and former officers,

directors, managers, members, employees, shareholders, insurers, landlords, lenders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) release each other from any additional attorneys' fees or expenses related to the resolution of this matter.

F. Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Award Metals' compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VIII. MISCELLANEOUS PROVISIONS

A. **No Admission of Liability.** Neither this Consent Decree, the implementation of additional or modified BMPs, the revision and implementation thereof of the SWPPP, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Award Metals maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

B. **Force Majeure**. Award Metals will notify Plaintiff if timely implementation of its duties under this Consent Decree becomes impossible due to circumstances beyond the control of Award Metals or its agents and which could not have been reasonably foreseen and prevented by Award Metals' exercise of due diligence. Any delays due to Award Metals' failure to exercise diligent efforts to comply with the terms of this Consent Decree will not, in any event, be considered to be circumstances beyond Award Metals' control.

C. **Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or specifically herein.

D. **Choice of Law and Venue.** The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

/ / /

E. **Severability.** In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

F. **Correspondence and Notices.** Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

   **1.** First-class (registered or certified) mail return receipt requested;

   **2.** Overnight or two-day courier; or

   **3.** By email on any Party by the other Party to the following addresses:

   **If to Plaintiff:**

   Evan J. Smith
   Ryan P. Cardona
   BRODSKY SMITH
   9595 Wilshire Blvd., Ste. 900
   Beverly Hills, CA 90212
   Tel:   (877) 534-2590
   Fax:   (310) 247-0160
   Email: esmith@brodskysmith.com
              rcardona@brodskysmith.com

   **If to Award Metals:**

   Jason Moberly Caruso
   Christopher C. Steckbauer
   NEWMEYER DILLION
   895 Dove Street, 2nd Floor
   Newport Beach, CA 92660
   Tel: (949) 271-7388
   Email:  jason.caruso@ndlf.com
              christopher.steckbauer@ndlf.com

Any change of address or addresses shall be communicated in the manner described above for giving notices.

G. **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**H.     Modification of the Consent Decree.**  Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Judgment by the Court.

**I.     Full Settlement.**  This Consent Decree contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto.  No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto.  No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**J.     Integration Clause.**  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and/or warranties (express or implied) concerning the subject matter of this Consent Decree.

**K.     Authority of Counsel.**  The undersigned representatives for Plaintiff and Award Metals each certify that they are fully authorized by the party whom they represent to approve this Consent Decree as to form.

**L.     Authority.**  Award Metals certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of Award Metals, and to legally bind Award Metals to its terms.

**M.     Agreement to be Bound.**  The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IX. COURT APPROVAL.

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice Letter which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date set forth below.

SO AGREED AND APPROVED AS TO CONTENT

Dated: 3/20/2024

PLAINTIFF MARICELA VALDEZ CHISM

*[signature]*

Maricela Valdez Chism

Dated: _____

DEFENDANT PACIFIC AWARD METALS, INC.

By: _____
Name:
Title:

APPROVED AS TO FORM

Dated: 3/21/2024

BRODSKY SMITH

By: *[signature]*
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

[Signatures Continued Below]

## IX. COURT APPROVAL

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice Letter which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: _____     **PLAINTIFF MARICELA VALDEZ CHISM**

_____
Maricela Valdez Chism

Dated: 3-21-24     **DEFENDANT PACIFIC    AWARD METALS, INC.**

By: _____
Name:   Robert Moeck
Title:   Director of Operations, West

**APPROVED AS TO FORM**

Dated: _____     **BRODSKY SMITH**

By: _____
Evan J. Smith (SBN: 242352)
Ryan P. Cardona (SBN: 302113)

*Attorneys for Plaintiff*

[Signatures Continued Below]

Dated: March 26, 2024

**NEWMEYER DILLION LLP**

By: /s/ J. Caruso
Jason Moberly Caruso (SBN: 287809)
Christopher C. Steckbauer (SBN: 314116)

*Attorneys for Defendant*

IT IS SO ORDERED.

Date: June 20, 2024

The Honorable Consuelo B. Marshall
United States District Court Judge
Central District of California



22 April 2024

Via Email:
Arwyn Carroll
Arwyn.Carroll@usdoj.gov

US Department of Justice
Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-07415

RE: Maricela Valdez Chism vs Award Metals, Inc. a/k/a Pacific Award Metals, Inc.
Civil Case No.:  2:23-cv-04952-CBM-BFM

Dear Ms. Carroll:

Council for Watershed Health (CWH) has read the proposed consent judgment, and understands that as a result of the entry of the proposed consent decree by the Court, CWH shall receive funds in the amount of Three Thousand Dollars ($3,000.00) for use toward its Watershed Connections initiative and activities in the San Gabriel River Watershed. CWH will spend any monies it receives under the consent judgment for the purposes specified in the consent judgment. CWH is recognized as an exempt entity under section 501 (c)(3) of the US Internal Revenue Code. CWH will not use any money it receives under the consent judgment for lobbying purposes (see, e.g., Internal Revenue Service definition of lobbying, 26 C.F.R. § 56.4911-2). CWH will submit to the Court, the United States, and the parties a letter describing how the Supplemental Environmental Project funds were spent.

Attached is a description of CWH's Watershed Connections initiative and how the funds will be spent in the San Gabriel River Watershed.

If any additional information is needed, please contact me via email at director@watershedhealth.org.

Sincerely,

Eileen Alduenda
Executive Director


cc:
Evan J. Smith – esmith@brodskysmith.com
Ryan P. Cardona – rcardona@brodskysmith.com
Jason Moberly Caruso -  jason.caruso@ndlf.com
Christopher C. Steckbauer - christopher.steckbauer@ndlf.com



The Council for Watershed Health (CWH) is a 501(c)(3) non-profit organization. Our mission is to advance the health and sustainability of our region's watersheds, rivers and habitats - both in natural areas and urban neighborhoods. We do this through science-based research, education and inclusive engagement.

**Watershed Connections - San Gabriel River Watershed**
CWH launched Watershed Connections in the summer of 2016 as a summer science education initiative to engage local communities in learning about their watersheds through community science education and communication tools. Community science means equipping community members who may have no specialized scientific knowledge or research experience with the tools and knowledge needed to study, inform decisions, and take action to improve the health of their watersheds and community.

Over the years, CWH expanded Watershed Connections to include a variety of outreach, interactive educational, and experiential engagement activities. CWH publishes brochures and social media posts on various watershed topics; facilitates tours of multi-benefit green stormwater infrastructure projects; and tables at various community outreach events. Topics for brochures and social media posts include how to recreate safely in local watersheds; what plants are invasive and threaten local habitat and native plant alternatives; and how to be a better watershed steward in your community. Tours of green stormwater infrastructure projects include meeting the project team to learn about the features that capture, clean, and infiltrate stormwater runoff and the resulting community benefits, and how to connect to future project efforts. CWH staff also conduct "pop up" community science activities at local events to introduce community members to water science related to our local creeks and rivers, and nature-based solutions to managing stormwater runoff.

CWH will use this SEP disbursement to support its Watershed Connections efforts in the San Gabriel River Watershed by printing and distributing watershed education materials at one or more community events.